IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SONIA DEJESUS,** | : | |
| **Plaintiff** | : | **Civil No. 1:12-CV-2318** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Comm'r of Soc. Sec.,** | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendant** | : | |

## M E M O R A N D U M

In this appeal from a decision of the Commissioner of Social Security denying Disability Insurance Benefits, Plaintiff claims the administrative decision concluding that she has not been under a disability as defined by the Social Security Act is not supported by substantial evidence and contains errors of law. For the following reasons, the court will affirm the decision of the Commissioner.

## I.     Background

### A.     Procedural History

On July 18, 2006, Plaintiff, Sonia DeJesus, protectively filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (*See* Doc. 8-5, p. 4 of 31.) Plaintiff claimed disability beginning on January 1, 2003. (*Id.*) The Social Security Administration initially denied Plaintiff's application by decision dated September 27, 2006. (Doc. 8-4, p. 4 of 118.) On November 12, 2006, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at p. 9 of 118.) ALJ George Yatron held a hearing on February 27, 2008, at which Plaintiff and Daniel M. Rapucchi, a vocational expert, testified. (Doc. 8-2, pp. 40-70 of 104.) ALJ Yatron issued an

unfavorable decision to Plaintiff on April 25, 2008 (Doc. 8-3, pp. 19-28 of 33), and Plaintiff filed an appeal with the Appeals Council on June 13, 2008 (Doc. 8-4, pp. 25-27 of 118).

While the claim was pending on appeal, Plaintiff filed another application for DIB on May 8, 2009. (*See* Doc. 8-5, pp. 23-31 of 31.) In this application, Plaintiff claimed disability beginning on April 26, 2008. (*Id.* at p. 25 of 31.) The Social Security Administration initially denied this second application by decision dated July 2, 2010. (Doc. 8-4, pp. 105-09 of 118.) On July 8, 2010, Plaintiff requested another hearing before an ALJ. (*Id.* at pp. 117-18 of 118.) The Appeals Council remanded the first claim, and directed the ALJ to adequately consider Plaintiff's maximum residual functional capacity during the entire period at issue, and, in so doing, to evaluate the opinion of Plaintiff's treating psychiatrist. (Doc. 8-3, pp. 30-31 of 33.) The Appeals Council further directed the first and second claims be consolidated. (*Id.*)

On January 5, 2011, ALJ Yatron held a second hearing on the consolidated action, at which time both Plaintiff and Patricia Scott, an impartial vocational expert, testified. (*See* Doc. 8-2, pp. 71-106 of 106.) The ALJ denied the consolidated action in its entirety on March 10, 2011 (*Id.* at pp. 21-32 of 106), and Plaintiff filed an unsuccessful appeal with the Appeals Council (*Id.* at p. 18 of 106). The Appeals Council denied Plaintiff's request on September 21, 2012 (*Id.* at p. 2 of 106), and Plaintiff commenced the instant action on November 20, 2012 (Doc. 1).

## B.  **Plaintiff's General Background**

Plaintiff is a citizen of the United States, and was born on September 18, 1971 (Doc. 8-5, p. 25 of 31), and, at all times relevant to this matter, was

considered a "younger individual,"[1] whose age would not seriously impact her ability to adjust to other work. 20 C.F.R. § 404.1563(c). Plaintiff completed secondary school and is able to communicate in English. (Doc. 8-2, p. 44 of 106.) As of the date of the hearings, Plaintiff was approximately five feet and four inches tall, and weighed 225 pounds as of the first hearing, and 178 pounds as of the second hearing.[2] (Doc. 8-2, pp. 43, 76 of 106.) Plaintiff lived with her five children, four of whom were considered minors as of the date of the second hearing. (*Id.* at p. 76 of 106.) Plaintiff had prior relevant work experience as a hand packager, in which capacity she was last employed in 2002, and housekeeper, in which capacity she was last employed in 2004. (*Id*. at pp. 46 of 106.)

### C. Medical Records

The gravamen of Plaintiff's instant action is the ALJ's assessment of her psychological impairments. (*See* Doc. 13, pp. 5-11 of 14.) Nevertheless, the record contains evidence concerning Plaintiff's physical medical conditions, and demonstrates Plaintiff has several physical impairments.

### 1. Physical Impairments

Plaintiff received treatment by her primary care physician for various physical ailments, including gastroesophageal reflux disease, obesity, osteoarthritis, fibromyalgia, and cold/exercise-induced asthma. (*See* Doc. 8-7, p. 152 of 177.) Plaintiff was advised that losing weight could help her physical ailments, and exercising and altering her diet caused a decrease in her weight. (*Id.* at p. 173 of

---

[1]  The Social Security regulations use the term "younger individual" to denote an individual aged 18 through 49 years. *See* 20 C.F.R. § 404.1563(c).

[2]  The decrease in Plaintiff's weight is attributable, at least in part, to gastric bypass surgery she underwent after her date of last insured.

177.)  Plaintiff also suffered discomfort due to the weight of her breasts (*Id.* at p. 151 of 177), and was evaluated for a breast reduction surgery in 2006 (*See id.* at p. 5 of 177).  Dr. Thomas Dibenedetto determined that Plaintiff did not have any musculoskeletal reason for her experiencing pain in her back apart from her over-sized breasts.  (*Id.*)

In 2009, Plaintiff sought medical attention for chronic intermittent pain in her hands, elbows, back, and knees.  (Doc. 8-9, p. 67 of 95.)  Plaintiff was diagnosed with having fibromyalgia by her primary care physician.  (*Id.* at pp. 66-67 of 95.)  Plaintiff's rhematologic laboratory test results were negative, and Plaintiff was prescribed several medications to assist with the pain.  (*Id.* at p. 66 of 95.)

## 2.    **Psychological Impairments**

With regard to Plaintiff's mental health issues, records show that Plaintiff was evaluated in early 2005, and diagnosed as having a major depressive affective disorder, recurrent without psychotic features.  (*See* Doc. 8-7, p. 123 of 177.)  Plaintiff saw John Illingworth, LCSW, and Heather Zettlemoyer, LSW, for individual psychological therapy from February 2005 through August 2008.  (*See generally id.* at p. 123 of 177; Doc. 8-9, pp. 78-83 of 95.)  During these sessions, Plaintiff's therapists generally noted that Plaintiff had a depressed mood and occasionally reported feeling anxious.  (Doc. 8-7, p. 46 of 177.)  Plaintiff had an inconsistent history of attending therapy sessions, and frequently cancelled scheduled appointments.  (*See, e.g.*, *id.* at pp. 51, 73 of 177.)

Plaintiff was treated by Dr. Kishorkumar Dedania, M.D., and Jennifer Morrison, PA-C, for medication management between May 2005 and April 2009.  (*See generally* Doc. 8-7, p. 118 of 177; Doc. 8-9, p. 88 of 95.)  Plaintiff continually

reported feeling depressed, anxious, and stressed, and attributed these feelings to her having five children whom she raises herself. (*See, e.g.*, Doc. 8-9, p. 89 of 95.) During the course of treatment, Dr. Dedania prescribed various medications, including Xanax, Abilify, and antidepressants, such as Zoloft, Wellbutrin, and Effexor. (*See, e.g.*, Doc. 8-9, p. 92 of 95.) Although Plaintiff reported that, while on medication, she was doing much better and experienced less depression and anxiety (*see, e.g.*, Doc. 8-8, p. 13 of 42 ("[Plaintiff] stated that she's less depressed and less anxious as long as she takes her medication."), Plaintiff inconsistently took the medication (*see, e.g.*, Doc. 8-7, p. 78 ("Taking Xanax infrequently."), 79 ("Stated that she stopped taking Zoloft and Abilify because of the weight problems and now she's been having more mood swings and depression.") of 177).

Plaintiff was examined by Dr. Dedania on April 18, 2006, January 17, 2008, and April 7, 2009, for annual psychiatric evaluations. (Doc. 8-7, p. 79 of 177; Doc. 8-8, p. 38 of 42; Doc. 8-9, p. 93 of 95.) On April 18, 2006, Dr. Dedania reported that Plaintiff had an anxious mood and complained about feeling depressed, which was in part attributed to Plaintiff's unilateral decision to stop taking medications. (Doc. 8-7, p. 79 of 177.) Dr. Dedania further reported that Plaintiff was appropriately dressed and groomed, maintained good eye contact, had intact attention, concentration, and memory, had an appropriate affect, had average intellectual functioning, and had fair judgment and insight. (*Id.*) At this time, Dr. Dedania reported Plaintiff had a global assessment functioning score of 46, and again diagnosed Plaintiff as having major depression, without psychotic features, and noted that financial concerns were Plaintiff's Axis IV psycho-social and environmental problems. (*Id.*)

On January 17, 2008, Dr. Dedania reported that Plaintiff had an anxious mood and was still mildly depressed. (Doc. 8-8, p. 38 of 42.) Dr. Dedania further reported that Plaintiff was cooperative, alert, oriented, appropriately dressed and groomed, had a fairly intact attention and concentration, and fair memory, intellectual functioning, judgment, and insight. (*Id*.) At this time, Dr. Dedania reported Plaintiff had a global assessment functioning score of 48, diagnosed Plaintiff as having major depression, without psychotic features, and an anxiety disorder not otherwise specified, and noted that financial and family concerns were Plaintiff's Axis IV psycho-social and environmental problems. (*Id*.)

On April 7, 2009, Dr. Dedania reported that Plaintiff had an anxious mood and was still mildly depressed. (Doc. 8-9, p. 93 of 95.) Dr. Dedania further reported that Plaintiff was cooperative, alert, oriented, appropriately dressed and groomed, had intact concentration and attention, and fair memory, intellectual functioning, judgment, and insight. (*Id*.) At this time, Dr. Dedania reported Plaintiff had a global assessment functioning score of 48, diagnosed Plaintiff as having major depression, without psychotic features, and an anxiety disorder not otherwise specified, and again noted that financial and family concerns were Plaintiff's Axis IV psycho-social and environmental problems. (*Id*.)

On February 2, 2007, Dr. Dedania completed a medical source statement. (*See generally* Doc. 8-7, pp. 130-135 of 177.) According to Dr. Dedania's answers, she diagnosed Plaintiff with major depression. (*Id*. at p. 130 of 177.) Moreover, Dr. Dedania identified Plaintiff as having poor memory, sleep and mood disturbances, emotional lability, difficulty thinking or concentrating, decreased energy, generalized persistent anxiety, and somatization unexplained by

organic disturbance. (*Id.*) Dr. Dedania opined that Plaintiff's impairments would cause her to be absent from work more than three times per month. (*Id*. at p. 132 of 177.) He further opined that Plaintiff was seriously limited, but not precluded, in her ability to maintain attention for two hour segments, maintain regular attendance, sustain an ordinary routine without special supervision, work with others without being unduly distracted, make simple work related decisions, complete a normal workweek without interruptions, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, be aware of normal hazards and take appropriate precautions. (*Id.* at p. 133 of 177.) Dr. Dedania's explanation, including the medical and clinical findings that supported his assessment of the foregoing, was limited to a single word: "Depression." (*Id*.) Dr. Dedania provided the same to explain his opinions that Plaintiff had a "fair" ability to: understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others, deal with stress of semiskilled and skilled work, interact appropriately with the general public, maintain socially acceptable behavior, adhere to basic standards of neatness and cleanliness, travel in an unfamiliar place, and use public transportation. (*Id*.) Indeed, Dr. Dedania failed to explain or identify the findings that supported his opinion that Plaintiff's suffering from depression would cause Plaintiff to be seriously limited in the abilities to do unskilled work.

(*Id.*)[3]   However, Dr. Dedania opined that Plaintiff had a satisfactory ability to remember work-like procedures, and understand, remember, and carry out very short and simple instructions.  (*Id.*)

Dr. Dedania further opined that Plaintiff had marked limitations in activities of daily living, difficulties in maintaining social functioning, difficulties of concentration, persistence, or pace, and had three episodes of decompensation.  (*Id.* at p. 134 of 177.)  On January 17, 2008, Dr. Dedania represented that Plaintiff's condition, symptoms, and limitations had not changed since February 27, 2007.  (*Id.* at p. 160 of 177.)

Dr. Sidney Segal, Ed.D., a state agency psychologist, performed an evaluation of Plaintiff as part of a review for the Social Security Administration on September 27, 2006, and completed a psychiatric review technique form and a mental residual functional capacity assessment.  (*Id.* at pp. 28-44 of 177.)  Dr. Segal opined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (*Id.* at p. 38 of 177.)  Dr. Segal also opined that Plaintiff's limitations were due to her physical pain rather than psychological problems.  (*Id.* at p. 40 of 177.)  In assessing Plaintiff's RFC, Dr. Segal found Plaintiff to be, at most, moderately limited.  (*Id.* at pp. 41-42 of 177.)  Specifically, Dr. Segal found that Plaintiff's ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workweek

---

[3]  "[D]epression [and] anxiety" was provided by Dr. Dedania as his explanation or medical and clinical findings to support his opinion regarding Plaintiff's mental abilities needed to do particular types of jobs.  (Doc. 8-7, p. 133 of 177.)

without interruptions, perform at a consistent pace without unreasonable periods of rest, and respond appropriately to changes in the work setting were moderately impaired. (*Id*.) Dr. Segal opined that Plaintiff was capable of meeting the basic demands of competitive work on a sustained basis despite the limitations resulting from her having a depressive disorder. (*Id*. at p. 43 of 177.)

Arlene Rattan, Ph.D., another state agency psychologist, similarly completed a psychiatric review technique form and mental RFC assessment following her review of Plaintiff's medical records on June 7, 2010. (Doc. 8-11, pp. 87-102 of 109.) Dr. Rattan opined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (*Id.* at p. 100 of 109.) In assessing Plaintiff's RFC, Dr. Rattan found Plaintiff to be, at most, moderately limited in certain activities. (*Id*. at pp. 87-88 of 109.) Specifically, Dr. Rattan found that Plaintiff's ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, complete a normal workweek without interruptions, perform at a consistent pace without unreasonable periods of rest, and respond appropriately to changes in the work setting were each moderately impaired. (*Id*.) Dr. Rattan opined that Plaintiff could make simple decisions, sustain an ordinary routine without special supervision, and was unrestricted in her understanding, memory, and social interaction abilities. (*Id*. at p.89 of 109.)

D. **Hearing Testimony**

Plaintiff testified that she suffers from depression, anxiety, and panic attacks. (Doc. 8-2, p. 46 of 106.) According to Plaintiff, her depression is

intermittent, but anxiety is constant. (*Id*. at p. 92.)  Plaintiff testified that her depression is related to her having a stillborn child in September 2002 (*id*. at p. 47 of 106), and gets worse when someone has a baby and around the time on which the child was stillborn (*id*. at p. 56 of 106).  Plaintiff testified that the majority of her anxiety is related to her concern for the safety of her five children. (*Id*.)  Plaintiff explained that her anxiety is exacerbated by large numbers of people, and that she alters her errands outside the house, *i.e.*, grocery shopping, trips to her children's school, etc., to occur at "off-peak hours" as to minimize her exposure to large crowds. (*See id*. at pp. 83-87 of 106.)

Plaintiff testified that she has both good and bad days. (*Id*. at p. 51 of 106.)  On good days, Plaintiff wakes up and walks her younger children four blocks to school, returns home and cleans her three story house. (*Id*.)  On bad days, which are far more frequent according to Plaintiff, she seldom gets out of bed, and her children watch television with her in her bedroom. (*Id.* at pp. 54-55 of 106.) Plaintiff has never been married, raises her children without assistance from their father, but receives assistance with much of the housework from her adult son. (*Id*. at p. 87 of 106.)

Plaintiff admitted that being on a medication regimen improves her psychological condition and functioning. (*See id*. at p. 57 of 106.)

Plaintiff has not attempted employment since terminating her employment as a housekeeper in 2004. (*See* Doc. 8-2, p. 93 of 106 (containing Plaintiff's testimony that she has not worked since she started the application for DIB); Doc. 8-6, p. 6 of 88 (listing last employment in 2004). *But see* Doc. 8-5, p. 25 of 31 (alleging Plaintiff became unable to work because of her disabling condition

on April 26, 2008).)  Plaintiff testified that she cannot go back to work yet because she cannot concentrate, and is nervous, depressed, and unreliable. (Doc. 8-2, p. 58 of 106.)  Specifically, Plaintiff explained her belief that she is unable to work due to her feeling "panicked around everything" and medical appointments during the following exchange:

> Q:   Do you feel like you could work?
>
> A:   No.  I think I - - they wouldn't want someone like me at work.
>
> Q:   Because?
>
> A:   Because I think I'd be panicked around everything. They probably wouldn't want me to be excused every time I got to go to the doctor's or something.

(Doc. 8-2, p. 96 of 106.)

During the supplemental hearing in 2011, the ALJ posed the following hypothetical to Patricia Scott, a vocational expert:

> [C]onsider hypothetically an individual 39 years of age with training, education, and experiences in the present case who is able to lift 20 pounds, stand and walk six hours in an eight-hour day, sit for six or more hours in an eight hour day, non-exertional limitations, no detailed instructions, temperature extremes, vibration, hazardous machinery, heights, or climbing.  Given those facts and circumstances, is there any work the hypothetical individual could perform on a sustained basis including any of the past work of the Claimant?

(*Id.* at pp. 97-98 of 106.)  Based on the hypothetical, Ms. Scott opined that the hypothetical individual having the same limitations as Plaintiff could perform work as a cashier and housekeeper.  (*Id.* at 98 of 106.)  Ms. Scott provided the following

testimony regarding available occupations in the northeast Pennsylvania region in addition to Plaintiff's past relevant work:

> Packer.  920.685-026, light, SVP two, unskilled. Nationally 146,900[,] and in this area, 750.  Hand bander which is by way of explanation banding of any materials such as envelopes, packs of paper, the little strip that bands them.  920.687-026.  Light, SVP one, unskilled. Nationally 410,100, and in this area, 640.  Hospital equipment plastic assembler.  712.687-010.  Light, SVP two, unskilled.  Nationally 890,00, and in this area, 1,050.

*(Id.* at p. 98 of 106.)  Thus, based on the hypothetical, Ms. Scott suggested that jobs suitable for Plaintiff's limitations as posed by ALJ Yatron existed in the regional economy.  (*See id*.)  In response to a hypothetical presented by Plaintiff's counsel, which was based on her crediting Plaintiff's limitations as set forth in Dr. Dedania's medical source statement and Plaintiff's testimony, the vocational expert testified that Plaintiff's unscheduled absence two to three days per month would preclude her from working in any position.  (*Id*. at p. 100 of 106.)  The vocational expert also testified that the combination of Plaintiff's abilities, as set forth on Dr. Dedania's medical source statement, would make it difficult for Plaintiff to sustain employment, but not preclude her from being employed.  (*Id*. at p. 101 of 106.)

## II.  <u>Standard of Review</u>

A district court's review of the Commissioner's decision is quite limited.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The scope of review by this court is restricted to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  42 U.S.C. § 405(g);

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). Findings of fact by the Commissioner are considered conclusive provided they are supported by "substantial evidence," a standard that has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981); *Richardson*, 402 U.S. at 401). "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

This court does not undertake a *de novo* review of the decision and does not re-weigh evidence presented to the Commissioner. *Schoengarth v. Barnhart*, 416 F. Supp. 2d 260, 265 (D.Del. 2006) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). The substantial evidence standard gives deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence. *See id*. If the decision is supported by substantial evidence, the reviewing court must affirm the decision, even if the record contains evidence which would support a contrary conclusion, *Panetis v. Barnhart*, 95 F. App'x 454, 455 (3d Cir. 2004), or if the court itself "would have decided the factual inquiry differently," *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.     Discussion

At the core of both of Plaintiff's arguments is the ALJ's finding that Plaintiff's reports regarding the extent of her psychological impairments were exaggerated and not credible. Before addressing Plaintiff's arguments, the court

will first discuss the administrative framework applicable to determinations of benefit eligibility and then set forth the key points of the ALJ's decision.

## A.   __Administrative Framework__

In determining whether a claimant is eligible for disability insurance benefits, the burden is on the claimant to show that she has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe she is unable to pursue substantial gainful employment[4] currently existing in the national economy.[5]  Applicable to Plaintiff, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).  A claimant is considered to be unable to engage in substantial gainful activity "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  To receive disability insurance benefits, a claimant must show that [she] contributed to the insurance program, is under retirement age, and became disabled

---

[4]  According to 20 C.F.R. 416.972, substantial employment is defined as "work activity that involves doing significant physical or mental activities."  "Gainful work activity" is the type of work usually done for pay or profit.

[5]  A claimant seeking supplemental security income benefits must also show that her income and financial resources are below a certain level.  42 U.S.C. § 1382(a).

prior to the date on which [she] was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a). The Commissioner does not dispute that Plaintiff satisfies the first two non-medical requirements and the parties do not object to the ALJ's finding that Plaintiff's date of last insured for purposes of receiving disability benefits was June 30, 2009 (Doc. 8-2, p. 26 of 106; Doc. 13, p. 1 n.2 of 14.)

To determine a claimant's rights to DIB,[6] the ALJ conducts a formal five-step evaluation process:

> (1) if the claimant is working or doing substantial gainful activity, she cannot be considered disabled;
>
> (2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits her ability to do basic work activity, she is not disabled;
>
> (3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;
>
> (4) if the claimant retains sufficient residual functional capacity ("RFC")[7] to perform his past relevant work, she is not disabled; and
>
> (5) if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can

---

[6] The same test is used to determine disability for purposes of receiving either DIB or SSI benefits. *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002). Therefore, courts routinely consider case law developed under both programs.

[7] Briefly stated, RFC is the most a claimant can do despite his recognized limitations. Social Security Ruling 96-9p defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, *i.e.,* 8 hours a day, for 5 days a week, or an equivalent work schedule."

> perform other work that exists in the local, regional, or
> national economy, she is not disabled.

*See* 20 C.F.R. § 416.920(a)(4); *see also Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). The claimant bears the burden of proof for steps one, two, and four of this test. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). The Commissioner bears the burden of proof for the last step to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

When challenging the ALJ's conclusion regarding the third step, the claimant bears the burden of proof. *See Crostly v. Astrue*, Civ. No. 10-cv-0088, 2011 WL 5026341, *2 (W.D. Pa. Oct. 21, 2011) (citing *Davis v. Commissioner of Soc. Sec.*, 105 F. App'x 319, 323 (3d Cir. 2004)); *see also Ramirez*, 372 F.3d at 550. Specifically, "[f]or a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Moreover, for a claimant to prove that her impairment is equivalent to a listing, she must "proffer medical findings which are equal in severity to *all* the criteria for the one most similar listed impairment." *Stremba v. Barnhart*, 171 F. App'x 936, 938 (3d Cir. 2006) (citing *Sullivan*, 493 U.S. at 530) (emphasis added).

## B.   ALJ's Decision

Following the prescribed analysis, ALJ Yatron first concluded Plaintiff has not engaged in substantial gainful activity since December 2004, which is nearly two years after the January 1, 2003 onset date as alleged in Plaintiff's application dated July 18, 2006 (Doc. 8-5, p. 4 of 31), or nearly three and a half years before the

April 26, 2008 onset date as alleged in Plaintiff's application dated May 8, 2009 (*Id.* at p. 25 of 31.). (Doc. 8-2, p. 26 of 106.) In resolving step two, the ALJ found that, as of the date of the hearing, Plaintiff suffered from four severe impairments: mood disorders, obesity, osteoarthritis, and fibromyalgia. (*Id.*)

At step three, the ALJ concluded none of Plaintiff's impairments, considered singly or in combination, satisfied the criteria of any relevant Listing. (*Id.* at p. 27 of 106.) That is, ALJ Yatron found that Plaintiff's physical impairments did not meet or medically equal Listing 1.02, finding that she could ambulate effectively and was able to perform fine and gross movements. (*Id.*) Such a finding was certainly supported by substantial evidence. (*See* Doc. 8-7, pp. 22-27 of 177.) With regard to Plaintiff's psychological impairments, although she reported experiencing significant depression and anxiety, the ALJ found that Plaintiff's medical records did not demonstrate she met or medically equaled the criteria of Listing 12.04. (Doc. 8-2, p. 27 of 106.) In support of his conclusion, the ALJ found that Plaintiff only had mild restrictions in activities of daily living and social functioning, and moderate limitations with regard to concentration, persistence, and pace. (*Id.*) ALJ Yatron also found that Plaintiff had not experienced any episodes of decompensation. (*Id.*) Because the ALJ found that Plaintiff did not have any marked difficulties, he concluded that the Paragraph B criteria[4] were not satisfied. ALJ further found that Plaintiff did not satisfy the Paragraph C criteria, concluding that there was no evidence that Plaintiff experienced any episodes of

---

[4] To qualify under Listing 12.04, a claimant's mental impairment must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration.

decompensation, that a minimal increase in the mental demands or change in environment would cause her to decompensate, or that she could not function outside a highly supportive living arrangement. (*Id.*) Thus, ALJ Yatron concluded that Plaintiff's impairments did not satisfy the third step of the sequential evaluation process.

> At step four, the ALJ concluded Plaintiff:
>
> [H]ad the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that she could not follow detailed instructions, she could not climb, and she could not be exposed to hazardous machinery, temperature extremes, heights, and vibration.

(*Id.* at p. 28 of 106.) The ALJ further concluded that Plaintiff could perform her past relevant work as a housekeeper, which was classified as light in exertion and unskilled in nature. (*Id.* at p. 31 of 106.) Moreover, based on Plaintiff's young age, level of education, work experience, and residual functional capacity, as well as the vocational expert's testimony, the ALJ concluded that there were numerous light, unskilled jobs existing in the national and regional economies that Plaintiff could perform despite her limitations, such as, a packer, hand bander, and hospital equipment assembler. (*See id.* at p. 32 of 106.)

The ALJ further acknowledged Plaintiff's claims of experiencing depression and anxiety, and noted that Plaintiff underwent a course of psycho-pharmaceutical treatment that was effective, although Plaintiff had a history of noncompliance with her psychiatric treatment. (*Id.* at p. 29 of 106.) The ALJ also noted that Dr. Dedania found Plaintiff had numerous marked restrictions and three episodes of decompensation, but did not credit Dr. Dedania's opinion because it was neither internally consistent nor consistent with the medical record. (*Id.* at p. 30 of

106.)  Instead, the ALJ credited the opinion of Dr. Segal, the state agency psychiatrist, finding it more consistent with the objective medical evidence, which indicated, *inter alia*, that Plaintiff had only mild to moderate difficulties with relevant abilities, and no repeated episodes of decompensation.  (*Id*. at p. 29 of 106.)  Finally, although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, he discredited Plaintiff's statements concerning the intensity, duration, and limiting effects of the alleged symptoms as inconsistent with the balance of the record.  (*See id.*)

## C.  Plaintiff's Arguments

Plaintiff raises two arguments in support of her appeal.  Specifically, she contends that the ALJ improperly: (1) disregarded the opinion of Plaintiff's treating psychiatrist; and (2) assessed the credibility of Plaintiff.  The court will address these contentions in an order to facilitate their discussion.

### 1.  Plaintiff's Credibility

Plaintiff contends that the ALJ did not properly assess her credibility.  Essentially, Plaintiff contends that the ALJ erred in finding that Plaintiff's testimony concerning the intensity, duration, and limiting effects of her depression and anxiety was not credible.  (*See* Doc. 8-2, p. 29 of 106.)  Pursuant to regulations promulgated by the Commissioner,"[a]llegations of . . . subjective symptoms must be supported by objective medical evidence."  *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529).  If the ALJ concludes a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must then attempt to ascertain and evaluate the severity of the claimant's subjective symptoms as well as the degree to which it may limit the claimant's ability to perform various types of work.  *Id*.; *Scatorchia v.*

*Commissioner of Soc. Sec.*, 137 F. App'x 468, 471 (3d Cir. 2005).  This inquiry
"requires the ALJ to determine the extent to which a claimant is accurately stating
the degree of [symptoms] or the extent to which he or she is disabled by it."
*Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529(c)).  When the ALJ
evaluates the claimant's credibility, he may consider the individual's daily activities
and the consistency of the individual's own statements.  *Scatorchia*, 137 F. App'x at
471.  An ALJ is not required to accept a plaintiff's claims regarding his limitations.
*See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983) (providing that
credibility determinations as to a claimant's testimony regarding the claimant's
limitations are for the ALJ to make).  It is well-established that an ALJ's findings
based on the credibility of the claimant are to be accorded great weight and
deference, particularly since the ALJ is charged with the duty of observing the
witness' demeanor.  *Chromey v. Astrue*, Civ. No. 4:11-cv-0103, 2012 WL 123548,
*6 (M.D. Pa. Jan. 17, 2012) (citing *Walters v. Commissioner of Soc. Sec.*, 127 F.3d
525, 531 (6th Cir. 1997); *Casias v. Secretary of Health & Human Servs.*, 933 F.2d
799, 801 (10th Cir. 1991)).

> Instantly, in evaluating Plaintiff's claims, the ALJ appropriately
considered Plaintiff's psychological impairments, the resultant symptoms, and their
limiting effect on Plaintiff.  Although the ALJ found Plaintiff's medically
determinable impairments could reasonably be expected to produce the alleged
symptoms, he concluded that Plaintiff's self-reported claims of debilitating
depression and anxiety were inconsistent both internally and with the balance of the
record.  In support of this conclusion, the record contains evidence that: (1)
Plaintiff's psycho-pharmaceutical treatment was generally effective and improved

Plaintiff's psychological and emotional states; (2) Plaintiff was frequently noncompliant with taking recommended medications; (3) Plaintiff frequently cancelled therapy appointments; (4) Plaintiff's annual psychiatric evaluations were generally within normal limits; (5) Plaintiff cared for five children, prepared meals, grocery shopped, and did housework; and (6) Plaintiff's reports of aggravating factors were inconsistent, inasmuch as she indicated her panic attacks are exacerbated while she is both in crowds and in her house. Thus, substantial evidence supports the ALJ's conclusion that Plaintiff's claims of essentially totally disabling depression and anxiety were not entirely credible. Therefore, the court will uphold the ALJ's decision in this respect.

## 2. Treating Psychiatrist

Plaintiff next argues that the ALJ improperly weighed her treating psychiatrist's opinion. Specifically, Plaintiff contends that ALJ Yatron improperly rejected the opinion of Dr. Dedania, contained in a medical source statement. (Doc. 8-7, pp. 130-35 of 177.) Dr. Dedania treated Plaintiff since 2005 (*see* Doc. 8-7, p. 118 of 177), and provided a Medical Source Statement on February 27, 2007, regarding the nature and severity of Plaintiff's impairments and the limiting effects thereof (*see* Doc. 8-7, pp. 130-35 of 177). Dr. Dedania opined that Plaintiff's psychological conditions extremely limited Plaintiff in terms of occupational abilities, such as impacting her ability to maintain attention, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, work near others without being distracted, complete a normal workweek without interruptions, perform at a consistent pace, and deal with normal work stress. (*Id.* at p. 133 of 177.) Dr. Dedania evaluated that Plaintiff's abilities in the foregoing areas

would be seriously limited, but not precluded. (*See id.* at pp. 132-33 of 177.) Dr. Dedania only listed "depression" as her explanation of the limitations, despite the form's instructing the physician to identify the particular medical findings that supported his assessment. (*Id*. at p. 133 of 177.)

The Third Circuit has explained, "the opinions of treating physicians should be given great weight[.]" *Johnson v. Commissioner of Soc. Sec.*, 398 F. App'x 727, 735 (3d Cir. 2010) (citing *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, an ALJ "may reject a treating physician's opinion outright . . . on the basis of contradictory medical evidence." *Johnson*, 398 F. App'x at 735 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.927(d)(2). Furthermore, a physician's opinion as to whether a claimant is capable of working or should receive disability benefits is not entitled to controlling weight because that determination is reserved for the Commissioner. *Russo v. Astrue*, 421 F. App'x 184, 191 n.5 (3d Cir. 2011) (citing *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994) ("We recognize, of course that a statement by a plaintiff's treating physician supporting an assertion that she is 'disabled' or 'unable to work' is not dispositive of the issue.")); *see also* 20 C.F.R. § 416.927(e).

Here, Plaintiff contends that ALJ Yatron did not properly credit her treating psychiatrist's opinion regarding her ability to work and psychological abilities. The treating psychiatrist's opinion as to this ultimate issue, *i.e.*, Plaintiff's ability to work, however, is not controlling because such conclusions are expressly reserved for the Commissioner. *Russo*, 421 F. App'x at 191. Moreover, the ALJ properly found that the treating psychiatrist's opinion was contradicted by objective medical evidence of record. (Doc. 8-2, p. 30 of 106; *see also Becker v.*

22

*Commissioner of Soc. Sec. Admin.*, 403 F. App'x 679, 686 (3d Cir. 2010) (citing

*Plummer*, 186 F.3d at 429, for the proposition that an ALJ "may reject the treating

physician's assessment if such rejection is based on contradictory medical

evidence"). In rejecting Dr. Dedania's opinion, ALJ Yatron reasoned as follows:

> The opinion itself is not internally consistent. It defies
> logic to believe that the claimant could have marked
> limitations in 3 functional limitations despite not being
> precluded from functioning in a single one of the 25
> abilities listed. There is also no evidence in the record of
> any episodes of deterioration or decompensation. Dr.
> Dedania did not give any examples of such episodes, so it
> is not clear how she arrives at the number of 3. . . .
> Moreover, Dr. Dedania's own treatment notes show that
> the claimant's affect, appearance, memory, orientation,
> thought content, thought process, perceptions, motor
> activity, interview behavior, speech and language were all
> within normal limits. She found only moderately
> depressed and anxious mood, mildly impaired insight and
> judgment, and distractibility. These findings fall well
> short of anything that would support the extreme
> limitations found by Dr. Dedania [in the medical source
> statement].

(Doc. 8-2, pp. 30-31 of 106 (citations omitted).)

The court agrees that Dr. Dedania's assessment is inconsistent both

internally as well as with the medical records, and that the marked limitations set

forth therein are at odds with the balance of the psychiatrist's own medical notes

created during the course of treatment. A simple review of Plaintiff's medical

records demonstrate that Dr. Dedania's opinion contained in the medical source

statement paints an entirely different picture of Plaintiff as the picture reflected in

the treatment records.

In response to ALJ Yatron's reasoning, Plaintiff argues that Dr. Dedania's opinion that Plaintiff had experienced three episodes of decompensation and deterioration is supported by evidence in the form of Plaintiff's multiple missed appointments with her psychiatrist and therapists. (*See* Doc. 13, p. 9 of 14.) Plaintiff apparently requests the court to assume Plaintiff's failure to keep her appointments was a result of her suffering episodes of decompensation. (*See id.*) The record does not demonstrate that Plaintiff failed to keep her appointments because of such episodes; rather, the record simply provides that Plaintiff failed to attend her scheduled appointments. The court will not engage in speculation to attribute a reason to Plaintiff's failures. Indeed, Plaintiff's argument that her absences were due to her suffering such episodes is unsupported. Accordingly, the court agrees with ALJ Yatron that Dr. Dedania's indicating Plaintiff had three episodes of deterioration or decompensation is unsupported by the medical record and was justifiably discredited.

Furthermore, with respect to Plaintiff's ability to engage in competitive employment, Dr. Segal found that Plaintiff had only mild restrictions of activities of daily living and difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. With respect to Plaintiff's work-related psychological activities, Dr. Segal opined that Plaintiff had no significant limitations in social interactions, and only a few moderate limitations to her understanding and memory, sustained concentration and persistence, and adaptation abilities. Dr. Segal opined that Plaintiff was capable of meeting the basic demands of competitive work on a sustained basis despite the limitations resulting from her having a depressive

disorder.  The court finds that the ALJ's crediting Dr. Segal's opinion was supported by substantial evidence.

The objective medical evidence does not support, and indeed contradicts, Dr. Dedania's assessments.  Because Plaintiff's treating physician's opinions contained in the medical source statement were based, at most, on Plaintiff's subjective claims of debilitating depression and anxiety, the ALJ was justified in discrediting Dr. Dedania's opinions based upon Plaintiff's claims that the ALJ found to be exaggerated, *see supra* Part III.C.1, and was further justified in crediting the opinion of Dr. Segal, which was more consistent with the medical record.  Accordingly, the ALJ appropriately considered the treating physician's opinion, and the court will uphold the ALJ's decision in this respect because it is supported by substantial evidence.

## IV.         Conclusion

The ALJ's not crediting Plaintiff's testimony was not improper because the objective evidence of record did not support Plaintiff's claims of her experiencing totally debilitating depression and anxiety rising to the level of disability.  The ALJ did not improperly discredit the treating psychiatrist's opinion because the limitations set forth in Dr. Dedania's medical source statement was unsupported by empirical information and was not consistent with other evidence of record.  Based upon the forgoing, and following a thorough review of the administrative record, the court concludes that the Commissioner's decision denying

Plaintiff's application for DIB benefits is supported by substantial evidence, and will affirm the decision of the Commissioner.

An appropriate order will issue.

S/SYLVIA H. RAMBO
United States District Judge

Dated: January 10, 2014.